LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo (Bar No. 144074)
21800 Burbank Boulevard, Suite 310
Woodland Hills, California  91367
dalekgalipo@yahoo.com
Telephone:   (818) 347-3333
Facsimile:   (818) 347-4118

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANCE MCCLAIN; and JEANNE BARRAGAN, in each case individually and as successor in interest to Thomas McClain, deceased,<br><br>        Plaintiffs,<br><br>    vs.<br><br>CITY OF EUREKA; STEPHEN LINFOOT; and DOES 1-10, inclusive,<br><br>        Defendants. | CASE NO.:  3:15-CV-02070-WHO<br><br>**PLAINTIFFS' MOTIONS IN LIMINE**<br><br>FPTC:      October 11, 2016<br>Time:        9:00 a.m.<br>Place:        Ctrm 2, 17th Floor,<br>                San Francisco<br><br>Trial:       November 14, 2016<br>Time:        8:30 a.m.<br>Place.:      Eureka Courthouse |

## **<u>TABLE OF CONTENTS</u>**

Table of Authorities...........................................................................................iv

Notice of Motion and Motion in Limine..............................................................vii

Memorandum of Points and Authorities...............................................................1

**I.      INTRODUCTION**............................................................................**1**

**II.     MOTION NO. 1 TO EXCLUDE EVIDENCE OF OR REFERENCE TO THE DECEDENT'S CONSUMPTION OF ALCOHOL ON THE DATE OF THE INCIDENT, INCLUDING THE TOXICOLOGY REPORT**...........................................................................................**2**

      **1.      Alcohol Evidence Should be Excluded as Irrelevant Under FRE 401, 402**..................................................................................**2**

      **2.      Alcohol Evidence Should be Excluded Under FRE 403 Because the Probative Value, if Any, Is Substantially Outweighed by the Danger of Unfair Prejudice and Misleading the Jury**..........................**4**

      **3.      Alcohol Evidence Should be Excluded as Improper Character Evidence Under FRE 404**......................................................**4**

**III.    MOTION NO. 2 TO EXCLUDE EVIDENCE OF OR REFERENCE TO PLAINTIFF LANCE MCCLAIN'S CRIMINAL HISTORY**.................**5**

      **1.      Evidence of Plaintiff Lance McClain's Criminal History Should be Excluded as Irrelevant Under FRE 401, 402, as Officer Linfoot had no Knowledge About Anything Regarding Plaintiff Lance McClain at the Time of the Shooting**.........................................**6**

      **2.      Evidence of Plaintiff Lance McClain's Criminal History Should be Excluded Under FRE 403 Because the Probative Value, if Any, Is Substantially Outweighed by the Danger of Unfair Prejudice and Misleading the Jury**...........................................................**7**

**IV.     MOTION NO. 3 TO EXCLUDE INFORMATION UNKNOWN TO OFFICER LINFOOT AT THE TIME OF THE SHOOTING, INCLUDING OFFICERS MCELROY'S AND HARKNESS' OBSERVATIONS OF THE DECEDENT HANDLING THE REPLICA GUN, THE DECEDENT'S INTERACTION WITH THE MALE DRIVER OF THE PICKUP TRUCK, THE DECEDENT'S TATTOOS, AND ITEMS FOUND ON THE DECEDENT'S PERSON AND IN HIS HOME AFTER THE SHOOTING**.........................................................**8**

ii

1      1.    **The Decedent's Tattoos**...........................................................................11

2      2.    **Officer McElroy's and Sergeant Harkness' Observations of the Decedent Handling the Replica Gun and the Decedent's Interaction with the Male Driver of the Pickup Truck**.............................................12

      3.    **Items Found on the Decedent's Person or In His Residence After the Shooting**............................................................................................13

**V.**    **MOTION NO. 4 TO EXCLUDE TRAJECTORY DIAGRAMS AND PICTURES CREATED BY ALEXANDER JASON**.......................................15

**VI.**    **MOTION NO. 5 TO EXCLUDE EVIDENCE OF OR REFERENCE TO THE HUMBOLDT DISTRICT ATTORNEY'S FINDINGS THAT THE SHOOTING WAS JUSTIFIED AND DECISION NOT TO PROSECUTE OFFICER LINFOOT**................................................................17

**VII.**    **MOTION NO. 6 TO EXCLUDE EVIDENCE OF OR REFERENCE TO THE CITY OF EUREKA POLICE DEPARTMENT'S FINDING THAT THE SHOOTING WAS IN POLICY**.....................................................................19

PLAINTIFFS' MOTIONS IN LIMINE

# **Table of Authorities**

## **Cases**

*Arlio v. Lively*,
 474 F.3d 46 (2d Cir. 2007)....................................................................................15

*Blancha v. Raymark Industries*,
 972 F.2d 507 (3d Cir. 1992)...................................................................................15

*Deorle v. Rutherford*,
 272 F.3d 1272 (9th Cir. 2001)   .............................................................................9

*Gates v. Rivera*,
 993 F.2d 697 (9th Cir. 1993)..................................................................................5

*Glenn v. Washington Cnty.*,
 673 F.3d 864 (9th Cir. 2011)................................................................................10

*Graham v. Connor*,
 490 U.S. 385 (1989).....................................................................................*passim*

*Gravelet-Blondin v. Shelton*,
 728 F.3d 1086 (9th Cir. 2013)................................................................................9

*Gregory v. Oliver*,
 2003 WL 1860270 (N.D. Ill. Apr. 9, 2003)...........................................................14

*Hill v. California*,
 401 U.S. 797 (1971)................................................................................................9

*Jackson v. City of Bremerton*,
 268 F.3d 646 (9th Cir. 2001).................................................................................10

*Jackson v. City of Gahanna*,
 2011 WL 587283 (S.D. Ohio Feb. 9, 2011)...........................................................14

*Kingsley v. Hendrickson*,
 576 U. S.__ (2015) (Slip Opinion, June 22, 22015, Case No. 14–6368)..........8, 9

*Kunz v. DeFelice*,
 538 F.3d 667 (7th Cir. 2008)................................................................................14

*Lewis v. City of Chicago Police Dep't*,
 590 F.3d 427 (7th Cir. 2009).........................................................................18, 20

*Maryland v. Garrison*,
 480 U.S. 79 (1987).................................................................................................9

*Mason v. City of Chicago*,
 631 F. Supp. 2d 1052 (N.D. Illinois 2009).......................................................3, 14

*Mattos v. Agarano*,
 661 F.3d 433 (9th Cir. 2011)..................................................................................9

*Nelson v. City of Davis*,
    685 F.3d 867 (9th Cir. 2012)..................................................................9

*Palmerin v. Riverside*,
    794 F.2d 1409 (9th Cir. 1985).................................................5, 6, 12, 14

*Palmquist v. Selvick*,
    111 F.3d 1332 (7th Cir. 1997)....................................................6, 18, 20

*Rockwell v. Yukins*,
    341 F.3d 507 (6th Cir. 2003)................................................................15

*Seals v. Mitchell*,
    2011 WL 1399245 (N.D. Cal. Apr. 13, 2011).......................................7

*Smith v. City of Hemet*,
    394 F.3d 689 (9th Cir. 2005)................................................................10

*Stringer v. City of Pablo*,
    2009 WL 5215396 (N.D. Cal. Dec. 28, 2009)......................................7

*Tennessee v. Garner*,
    471 U.S. 1 (1985)...............................................................................8, 9

*Tulloss v. Near N. Montessori School, Inc.*,
    776 F.2d 150 (7th Cir. 1985)................................................................18

*United States v. Aims Back*,
    588 F.2d 1283 (9th Cir. 1986).............................................................4, 7

*United States v. Mendoza–Prado*,
    314 F.3d 1099 (9th Cir. 2002)...............................................................5

*United States v. Place*,
    462 U.S. 696 (1983)...............................................................................9

*Wiersta v. Heffernan*,
    789 F.2d 968 (1st Cir. 1986)...........................................................7, 15

*Wilson v. Union Pacific R. Co.*,
    56 F.3d 1226 (10th Cir. 1995)...............................................................7

*Wisler v. City of Fresno*,
    No. CVF 06-1694 LJO, 2008 WL 2954179 (E.D. Cal. July 30, 2008)...............15

## **Statutes**

United States Code 42 U.S.C. § 1983..........................................................14

Federal Rule of Evidence 401.................................................................2, 6

Federal Rule of Evidence 402.........................................................*passim*

Federal Rule of Evidence 403.........................................................*passim*

PLAINTIFFS' MOTIONS IN LIMINE

Federal Rule of Evidence 404..........................................................................2, 4, 11, 14

Federal Rule of Evidence 404.................................................................................5

Federal Rule of Evidence 801...............................................................................13

**Secondary Sources**
Ninth Circuit Model Jury Instruction 9.22..........................................................10

PLAINTIFFS' MOTIONS IN LIMINE

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Plaintiffs hereby move *in limine* for orders as follows:

In their first motion *in limine*, Plaintiffs move to exclude evidence of or reference to the decedent's alcohol consumption, both on the date of the incident and prior to the incident, including the toxicology report.  Plaintiffs make this motion under Federal Rules of Evidence, Rules 401, 402, 403, and 404.

In their second motion *in limine*, Plaintiffs move to exclude evidence of or reference to Plaintiff Lance McClain's criminal history.  Plaintiffs make this motion under Federal Rules of Evidence, Rules 401, 402, 403, and 404.

In their third motion *in limine*, Plaintiffs move to exclude evidence of or reference to information unknown to Officer Linfoot at the time of the shooting, including Officer Ryan McElroy's and Sergeant Stanley Harkness' observations of Mr. McClain handling the replica gun, Mr. McClain's interactions with the male driver of the pickup truck, the decedent's tattoos, items found on the decedent's person after the shooting, including brass knuckles and a pipe, and items found in the decedent's residence after the shooting.  Plaintiffs make this motion under Federal Rules of Evidence, Rules 401, 402, 403, and 801.

In their fourth motion *in limine*, Plaintiffs seek to exclude the trajectory diagrams and computer graphic images created by Alexander Jason as lacking foundation, speculative, cumulative, and under Federal Rule of Evidence, Rule 403.

In their fifth motion in limine, Plaintiffs seek to exclude evidence, testimony, argument, or reference to any conclusions of the Humboldt County District Attorney's Office that Officer Linfoot's shooting of the decedent was any of the following: (1) did not warrant criminal prosecution; (2) reasonable; or (3) justified.  Plaintiffs make this motion under Federal Rules of Evidence, Rules 401, 402, and 403.

PLAINTIFFS' MOTIONS IN LIMINE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In their sixth motion *in limine*, Plaintiffs seek to exclude evidence, testimony, argument, or reference to the City of Eureka's findings, including the results of the Eureka Police Department Critical Incident Response Team's investigation, that Officer Linfoot's shooting of the decedent was any of the following: (1) within policy; (2) reasonable; or (3) justified.  Plaintiffs make this motion under Federal Rules of Evidence, Rules 401, 402, and 403.

These motions are based on this Notice of Motion, the Memorandum of Points and Authorities, the records and files of this Court, and upon such other oral and documentary evidence as may be presented at the time of the hearing.

DATED:  October 4, 2016          LAW OFFICES OF DALE K. GALIPO


By_____/s/ Dale K. Galipo_____
Dale K. Galipo
Renee V. Masongsong
*Attorneys for Plaintiff*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This civil rights lawsuit arises out of the shooting of Thomas McClain by Stephen Linfoot on September 17, 2014.  In the early hours of September 17, 2014, police officers working for the Eureka Police Department were conducting surveillance near 1620 Allard A and B (a residential duplex) in an attempt to serve an arrest warrant on an individual unrelated to this incident when the officers observed Mr. McClain in his front yard.  At the time of this incident, Officer Linfoot was not responding to a "shots fired" call and had no information that anyone had been injured or that Mr. McClain had threatened anyone; in fact, he had never seen Mr. McClain before.  There was no crime observed or known to any of the officers on scene, including Officer Linfoot, *i.e.*, no shouts for help, no assault in progress, no report of shots fired.  Other than his own observation of the handle of what appeared to be (but was not) a real gun in Mr. McClain's waistband while Mr. McClain was on his own property, Officer Linfoot had no information that Mr. McClain had committed any crime.

At no time did Officer Linfoot ever see Mr. McClain touch the replica gun.  At no time did Officer Linfoot ever see Mr. McClain remove the replica gun from his waistband.  Officer Linfoot also never observed the replica gun come out of Mr. McClain's waistband.  Officer Linfoot was the only officer on scene who fired his weapon.

The following is the central dispute in this case: According to Defendants, Mr. McClain "reached for his waistband" immediately before he was shot; however, percipient witness Ms. Mottern observed Mr. McClain with his hands out and visible at the time of the first shot, and Ms. Mottern never saw Mr. McClain make any sudden reaching movement for his waistband or for the gun.  Corina Ward, Ms. Mottern's mother, also observed the incident and also never saw Mr. McClain make any sudden reaching movement.  Defendants' own police practices expert testified that if Mr.

McClain did not make a sudden reaching movement, which the percipient witnesses say he did not, there would have been no reason to shoot him.

## II. MOTION NO. 1 TO EXCLUDE EVIDENCE OF OR REFERENCE TO THE DECEDENT'S CONSUMPTION OF ALCOHOL ON THE DATE OF THE INCIDENT, INCLUDING THE TOXICOLOGY REPORT

Plaintiffs anticipate that Defendants will attempt to introduce evidence that the decedent consumed alcohol prior to this incident, including on the date of the incident. Plaintiffs assert that introduction of this evidence would be improper under Federal Rules of Evidence ("FRE"), Rules 401, 402, 403, and 404. FRE 401 defines "relevant evidence" as evidence having any tendency to make the existence of any fact that is of consequence to the determination or the action more probable or less probable than if would be without the evidence. FRE 402 states in part that evidence which is not relevant is not admissible. Evidence of facts and circumstances not known to Officer Linfoot during his encounter with the decedent are irrelevant. *Graham v. Connor*, 490 U.S. 385, 397 (1989). The jury may only consider the circumstances of which the shooting officer was aware when he used deadly force. *Graham*, 490 U.S. at 396.

### 1. Alcohol Evidence Should be Excluded as Irrelevant Under FRE 401, 402

Officer Linfoot testified in his deposition that at the time of the shooting, he had not formed any impression that the decedent was under the influence of alcohol. (Linfoot Deposition at 36:4-8). Because Officer Linfoot was unaware that the decedent had alcohol in his system at the time of the shooting, this fact had no bearing on Officer Linfoot's decision to shoot the decedent at the time, and no bearing now on whether Officer Linfoot's use of force was reasonable. As such, alcohol evidence is wholly irrelevant to whether it was objectively reasonable for Officer Linfoot to shoot the decedent. Officer Linfoot does not claim to have shot the decedent because the decedent was under the influence of alcohol, but rather because he thought the

1  decedent was reaching for the replica gun.  The jury must make this determination

2  based on relevant percipient witness testimony, not with improper "hindsight"

3  evidence.  In other words, Defendants may not introduce facts unknown to Officer

4  Linfoot at the time of the incident in order to mislead the jury into a verdict supported

5  by bias and the consideration of irrelevant evidence.

6  　　　In addition, the decedent's consumption of alcohol—both on the date of the

7  incident and prior to the date of the incident— is also not relevant to any damages

8  issues in this case.  There is no evidence whatsoever that the alcohol consumption had

9  any effect on his injuries or on the injuries suffered by his parents, the plaintiffs in this

10  case.

11  　　　Moreover, Defendants lack any admissible evidence, such as proper expert

12  testimony, to show that the decedent's alcohol use makes Defendants' allegations

13  about the decedent's behavior prior to the shooting more likely, or would affect

14  damages.  Here, Defendants have not identified any experts qualified to testify to the

15  effects of alcohol on human perception or behavior or on the impact of the decedent's

16  injuries.  In the absence of such testimony, any evidence that the decedent consumed

17  alcohol at any point prior to the incident is insufficient to make Defendants' allegations

18  about the decedent's behavior more likely or to affect damages.  *Mason v. City of*

19  *Chicago*, 631 F. Supp. 2d 1052, 1060-61 (N.D. Illinois 2009) ("The question of

20  whether Plaintiff smoked a marijuana cigarette three hours before the incident is no

21  more probative than whether the officers drank coffee before the incident.  The

22  introduction of expert testimony or testimony concerning facts unrelated to the

23  physical encounter would merely divert the jury from the relevant inquiry . . . .

24  Marijuana plays no part in this inquiry and the introduction of such evidence serves no

25  purpose other than to make a general character attack on Plaintiff.")

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**2.  Alcohol Evidence Should be Excluded Under FRE 403 Because the Probative Value, if Any, Is Substantially Outweighed by the Danger of Unfair Prejudice and Misleading the Jury**

Alternatively, even if there were some relevance to this evidence, this Court should use its discretion under FRE 403 and nevertheless exclude evidence of the decedent's alcohol use on the date of the incident, including the toxicology report. FRE 403 excludes relevant evidence "if its probative value is substantially outweighed by the danger of the unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Speculation that the decedent's blood alcohol level makes it more likely that he posed an imminent threat of death or serious bodily harm to Officer Linfoot would be too attenuated and would pale in comparison to the unduly prejudicial and misleading nature of such evidence when considering that Officer Linfoot did not form the impression that the decedent was under the influence of alcohol at the time of the shooting.

**3.  Alcohol Evidence Should be Excluded as Improper Character Evidence Under FRE 404**

Alternatively, under FRE 404, evidence of the decedent's alcohol consumption, cannot be used to prove that the decedent acted in some general "bad character" on the day in question.  Rule 404(a) provides that "Evidence of a person's character or a trait of a character is not admissible for the purpose of proving action in conformity therewith on a particular occasion."  "[E]vidence of other crimes or wrong acts is not looked upon with favor and must be carefully scrutinized to determine probative value."  *United States v. Aims Back*, 588 F.2d 1283, 1287 (9th Cir. 1986).  Any reference to the decedent's alcohol consumption at trial would suggest an improper inference based on character evidence, to the extent that the jury might infer from the

fact that the decedent engaged in "bad conduct" (drinking) on the date of the incident on another occasion gave Officer Linfoot probable cause to believe that he was under the influence of alcohol at the time of the shooting and thereby made it somehow reasonable for Officer Linfoot to shoot him. *Palmerin v. Riverside*, 794 F.2d 1409, 1414 (9th Cir. 1985) ("The federal rules bar the use of any circumstantial evidence that requires an inference of a person's character to make it relevant . . . ."). Ninth Circuit case law is clear that "'Character evidence' is normally not admissible in a civil rights case." *Gates v. Rivera*, 993 F.2d 697, 700 (9th Cir. 1993). Character must be "in issue," i.e., an essential element of a charge, claim, or defense, for character evidence to be admitted. *See* Adv. Comm. Notes, Fed. R. Evid. 405(b); *United States v. Mendoza–Prado*, 314 F.3d 1099, 1103 (9th Cir. 2002). Because any alcohol related evidence in this case would require an inference as to the decedent's character to make it relevant, it should be excluded from evidence at the time of trial.

The toxicology report showing the decedent's blood alcohol level, which was conducted after the decedent had died, should also be excluded for each of the above reasons.

## III.   MOTION NO. 2 TO EXCLUDE EVIDENCE OF OR REFERENCE TO PLAINTIFF LANCE MCCLAIN'S CRIMINAL HISTORY

Plaintiffs anticipate that Defendants may attempt to introduce evidence of Plaintiff Lance McClain's criminal history and hereby move to exclude any reference to or evidence of Plaintiff Lance McClain's criminal history.

//

//

//

//

**1. Evidence of Plaintiff Lance McClain's Criminal History Should be Excluded as Irrelevant Under FRE 401, 402, as Officer Linfoot had no Knowledge About Anything Regarding Plaintiff Lance McClain at the Time of the Shooting**

Plaintiff Lance McClain is the decedent's father.  Officer Linfoot has never interacted with Plaintiff Lance McClain and had no knowledge about anything regarding Plaintiff Lance McClain at the time of the incident, including his criminal history.  The details of Plaintiff Lance McClain's criminal history or felony convictions, which were not known to Officer Linfoot, or police contacts that did not result in felony convictions, should be excluded as irrelevant under FRE 401 and therefore inadmissible under FRE 402.  *Graham v. Connor*, 490 U.S. 385, 397 (1989); *Palmquist v. Selvick*, 111 F.3d 1332, 1339 (7th Cir. 1997) ("[W]hen considering a charge of excessive force under the Fourth Amendment, evidence outside the time frame of the shooting is irrelevant and prejudicial.").  Moreover, "[t]he federal rules bar the use of any circumstantial evidence that requires an inference of a person's character to make it relevant . . . ."  *Palmerin v. Riverside*, 794 F.2d 1409, 1414 (9th Cir. 1985).

Plaintiff Lance McClain's criminal history is also irrelevant to any damages issues.  Plaintiffs anticipate that Defendants may attempt to minimize Plaintiff Lance McClain's relationship with his son by pointing toward his criminal history or periods of incarceration, and may suggest that because Plaintiff Lance McClain has a criminal history, he is not entitled to damages arising out of the death of his son, which is simply untrue.

//

//

//

**2.  Evidence of Plaintiff Lance McClain's Criminal History Should be Excluded Under FRE 403 Because the Probative Value, if Any, Is Substantially Outweighed by the Danger of Unfair Prejudice and Misleading the Jury**

Alternatively, even if there was some relevance to this evidence, which there is not, this Court should use its discretion under FRE 403 and nevertheless exclude evidence of Plaintiff Lance McClain's criminal history.  FRE 403 excludes relevant evidence "if its probative value is substantially outweighed by the danger of the unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Evidence of criminal history is highly prejudicial and likely to inflame, mislead, or confuse the jury.  *See*, *e.g.*, *Aims Back*, 588 F.2d at 1287; *Wiersta v. Heffernan*, 789 F.2d 968, 972 (1st Cir. 1986); *Wilson v. Union Pacific R. Co.*, 56 F.3d 1226, 1231 (10th Cir. 1995) ("Evidence of a conviction for drug possession alone . . . can be highly prejudicial and arouse jury sentiment against a party-witness.").  This is particularly true as to criminal history not known to an officer in an excessive force case.  *See Stringer v. City of Pablo*, 2009 WL 5215396, at *7 (N.D. Cal. Dec. 28, 2009) (holding that evidence of plaintiff's criminal history was "overwhelmingly prejudicial" where officers lacked such knowledge when the incident occurred); *Seals v. Mitchell*, 2011 WL 1399245, at *3 (N.D. Cal. Apr. 13, 2011) (in civil rights excessive force case, evidence of plaintiff's prior convictions are inadmissible because they are irrelevant and the probative value is substantially outweighed by the danger of unfair prejudice). Most importantly, this evidence will waste the court's time on tangential matters that are not material to the determination of the issues of this case. //

1

2

3

4

5

6

7

**IV.    MOTION NO. 3 TO EXCLUDE INFORMATION UNKNOWN TO OFFICER LINFOOT AT THE TIME OF THE SHOOTING, INCLUDING OFFICERS MCELROY'S AND HARKNESS' OBSERVATIONS OF THE DECEDENT HANDLING THE REPLICA GUN, THE DECEDENT'S INTERACTION WITH THE MALE DRIVER OF THE PICKUP TRUCK, THE DECEDENT'S TATTOOS, AND ITEMS FOUND ON THE DECEDENT'S PERSON AND IN HIS HOME AFTER THE SHOOTING**

8

9

10

11

12

13

14

Plaintiffs anticipate that at the time of trial, Defendants may seek to introduce evidence of or make reference to information unknown to Officer Linfoot at the time of the shooting, including Officer Ryan McElroy's and Sergeant Stanley Harkness' observations of the decedent handling the replica gun, the decedent's interaction with the male driver of the pickup truck, and items found on the decedent's person and in his residence after the shooting.

15

16

17

18

19

20

21

22

23

24

Since the United States Supreme Court first elucidated the Fourth Amendment reasonableness standard in police shooting-death cases, lower courts and juries have been required to confine their inquiry to the information known to the officer at the time of the use of force. *See Graham v. Connor*, *supra*. "The clarity of hindsight cannot provide the standard for judging the reasonableness of police decisions made in uncertain and often dangerous circumstances." *Tennessee v. Garner*, 471 U.S. 1, 26 (1985). The United States Supreme Court recently reiterated that this standard is an objective one. *Kingsley v. Hendrickson, et al.*, 576 U. S.__ (2015) (Slip Opinion, June 22, 22015, at *5-*12, Case No. 14–6368).[1] In other words, whether or not the use of

25

26

27

28

---

[1] While *Kingsley* concerns a substantive due process claim brought by a pretrial detainee under the Fourteenth Amendment, the Supreme Court applied an "objective reasonableness" standard and noted that the standard set forth in its opinion "is also consistent with our use of an objective 'excessive

8

deadly force by Officers Linfoot was objectively reasonable under the circumstances must be based on Officer Linfoot's "contemporaneous knowledge of the facts" and not his subjective intentions, thoughts or beliefs. *Kingsley* at *5-*12, Case No. 14–6368 ("the plaintiff is required to provide only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose"); *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001); *Gravelet-Blondin v. Shelton,* 728 F.3d 1086, 1091 (9th Cir. 2013), cert. denied, (2014) 134 S.Ct. 1292; *Nelson v. City of Davis*, 685 F.3d 867, 880 (9th Cir. 2012); *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011).  The Officer's subjective intent and beliefs are wholly irrelevant.

Adhering to the parameters of the officer's (here, Officer Linfoot's) state of mind in a Fourth Amendment reasonableness analysis is of the utmost importance because it maintains an essential balance and protects *both* law enforcement officers and the public.  *See Kingsley*, Slip Opinion at *9; *Garner*, 471 U.S. at 25-26 (the Fourth Amendment requires the "careful balancing of the important public interest in crime prevention and detection and the nature and quality of the intrusion upon legitimate interests of the individual" (citing *United States v. Place*, 462 U.S. 696, 703 (1983)).  For example, an arrest based on probable cause is reasonable for Fourth Amendment purposes, even though officers later learn that the wrong person was arrested. *Graham*, 490 U.S. at 396 (citing *Hill v. California*, 401 U.S. 797 (1971)).  A valid search warrant is reasonable under the Fourth Amendment even though it is mistakenly executed on the wrong premises.  *Graham*, 490 U.S. at 396 (citing *Maryland v. Garrison*, 480 U.S. 79 (1987)).  Derogation from the proper standard for

_____

force' standard where officers apply force to a person…" as set forth in *Graham v. Conner*.  *Kingsley*, Slip Opinion at *9.

"knowledge" in a Fourth Amendment reasonableness analysis would weather away the ability of the government to keep law and order just as it would violate the constitutional rights of the public.

In *Glenn v. Washington Cnty*., 673 F.3d 864, 873 (9th Cir. 2011), the Ninth Circuit most recently reiterated that information *unknown* to an officer at the time of his use of force – or information *acquired after the incident* by investigators or during discovery – cannot be considered. In *Glenn*, officers used a beanbag gun to shoot a man with a knife who was threatening suicide. Unknown to the shooting officer at the time of the incident, a witness told a 911 operator that the suspect "was threatening to kill everybody" and might "run at the cops with a knife." *Id*. The Ninth Circuit flatly rejected the District Court's "suggestion that, …these statements provide 'uncontroverted evidence demonstrat[ing] that the officers' safety concerns were not at odds with information provided to law enforcement." *Glenn v. Washington Cnty.*, 673 F.3d 864, 873 (9th Cir. 2011). The Court reiterated that "[w]e cannot consider evidence of which the officers were unaware—the prohibition against evaluating officers' actions 'with the 20/20 vision of hindsight' cuts both ways." *Id*., citing *Graham*, 490 U.S. at 396.

Accordingly, juries in the Ninth Circuit are expressly instructed that they "must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene" at the time of the use of force "and not with the 20/20 vision of hindsight." *Id*.; Ninth Circuit Model jury Instruction 9.22; *Jackson v. City of Bremerton,* 268 F.3d 646, 651 (9th Cir. 2001). The Ninth Circuit Model Instruction for excessive force claims further informs the jury, "the reasonableness of a seizure must [] be assessed by carefully considering the objective facts and circumstances that confronted the arresting officers." Ninth Circuit Model jury Instruction 9.22; citing *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In light of how the jury will be instructed and given the great weight of Supreme Court and Ninth Circuit authority on this issue, permitting the jury to learn about facts and circumstances that Officer Linfoot was not confronted with or that were otherwise unknown to Officer Linfoot (here, the only officer who fired his weapon) at the time they made the decision to use excessive force against the decedent would be improper. In addition, since this type of evidence is not relevant to the jury's reasonableness determination, any probative value would be substantially outweighed by the risk of unfair prejudice that the jury would rest its decision on an improper basis and judge the shootings with 20/20 hindsight.

Accordingly, each of the following pieces of evidence should be excluded:

**1. The Decedent's Tattoos**

Officer Linfoot testified in his deposition that at the time of the shooting, he did not have any information as to whether the decedent had any tattoos. (Linfoot Depo. at 36:13-15). The decedent's tattoos include the shape of the State of California made to look like brass knuckles, a nautical star with dripping red imagery, and a sleeve of skulls. This evidence is irrelevant and inadmissible under FRE 402 as set forth above because it was unknown to Officer Linfoot at the time of the shooting and therefore had no influence on Officer Linfoot's decision to shoot the decedent.

Moreover, this evidence should be excluded under FRE 403, as information regarding these tattoos carries the risk of inflaming the jury and detracting from the key issues, and any marginal probative value of Defendants' speculation about the decedent's tattoos would be clearly outweighed by the danger of unfair prejudice and be a waste of time.

Further, under FRE 404, evidence of the decedent's tattoos cannot be used to prove that Decedent acted in some general "bad character" on the day in question. FRE 404(a) provides that "Evidence of a person's character or a trait of a character is

not admissible for the purpose of proving action in conformity therewith on a particular occasion." *Palmerin v. Riverside*, *supra*.

    **2.   Officer McElroy's and Sergeant Harkness' Observations of the Decedent Handling the Replica Gun and the Decedent's Interaction with the Male Driver of the Pickup Truck**

    When Officer Linfoot was positioned to the east of 1620 Allard, inside his vehicle, Officer McElroy and Sergeant Harkness were conducting surveillance of 1620 Allard A from across the street. Officers McElroy and Harkness heard "clicking noises" from 1620 Allard B. Nothing in the evidence indicates that Officer Linfoot, from his position to the east of 1620 Allard, heard these noises. About ten minutes after they heard the clicking noises, Officer McElroy and Sergeant Harkness observed the decedent interact with a male driver of a pickup truck across the street from 1620 Allard. Again, nothing in the evidence indicates that Officer Linfoot observed this interaction. Subsequently, Officer McElroy phoned Captain Brian Stephens to inform him that the decedent was trying to start a fight with the male driver of the pickup truck. Nothing in the evidence indicates that Officer McElroy, Sergeant Harkness, or Captain Stephens informed Officer Linfoot of Officer McElroy's concern that the decedent was trying to start a fight with the male driver of the pickup truck.

    Shortly thereafter, Officer McElroy observed the decedent remove the replica gun from his waistband and "rack" the slide of the gun. Although Officer McElroy observed this, Officer Linfoot testified in his deposition that he never saw the decedent touch the gun. (Linfoot Depo. at 11:18-20, 47:14-22). Officer Linfoot also testified in his deposition that he never saw the decedent remove the gun from his waistband. (Linfoot Depo. at 18:13-23, 46:12-14). Officer Linfoot also testified in his deposition that he never observed the gun come out of the decedent's waistband. (Linfoot Depo. at 37:22-25). Officer McElroy testified in his deposition that he did not inform Officer

Linfoot that he had seen the decedent with a gun in his hand prior to the time that Officer Linfoot shot the decedent.  (McElroy Depo. at 54:2-5).  Sergeant Harkness also testified in his deposition that prior to the shooting, he did not tell Officer Linfoot that he may have seen a gun on the decedent's person.  (Harkness Depo. at 36:10-13).

Accordingly, the jury should not be permitted to hear this information that was completely unknown to Officer Linfoot at the time of the shooting.  Alternatively, the Court should exclude this evidence under FRE 403.

### 3. Items Found on the Decedent's Person or In His Residence After the Shooting

According to the Humboldt County Office of the Coroner Death Investigation Report, a pair of brass knuckles and a glass pipe were removed from the decedent's pants pockets after the shooting.  Nothing in the evidence indicates that Officer Linfoot had any indication that these items were in the decedent's pockets at the time of the shooting or that the decedent possessed these items generally.  According to the police reports, a marijuana plant, a digital scale, and marijuana smoking paraphernalia were found in the decedent's room at his residence after the shooting.  Again, nothing in the evidence indicates that Officer Linfoot had any indication, at the time of the shooting, that the decedent owned marijuana paraphernalia.  In fact, prior to this incident, Officer Linfoot had never seen the decedent before and knew nothing about him.  (Linfoot Depo. at 13:12-16).  Accordingly, and as set forth above, this information should be excluded under FRE 402 as irrelevant.  The reports referencing these items that were found on the decedent's person and in his room should likewise be excluded under FRE 402 and also as hearsay for which there is no exception under FRE 801.

Officer Linfoot does not claim to have shot the decedent because he had brass knuckles in his pocket or because he owned marijuana paraphernalia.  The decedent's alleged drug use, if any, is also not relevant to any damages issues in this case.  *Mason*

*v. City of Chicago*, 641 F. Supp. 2d 726, 730 (N.D. Ill. 2009) (in Section 1983 action, "any evidence regarding alleged drug use is not probative to the issue of damages, as such evidence does not touch on the value of [plaintiff's] life") (internal quotations omitted).  Moreover, the evidence cannot be used to show Mr. Pina's character or that he acted or will act in conformity therewith, pursuant to FRE 404.  *Palmerin v. Riverside*, *supra.*

Evidence or testimony concerning the items found on the decedent's person and in his room is also unduly prejudicial and misleading and should be excluded under FRE Rule 403.  Defendants should not be permitted to speculate as to whether the decedent uses drugs based on this after-acquired evidence of paraphernalia found in his room. Evidence of drug use, ownership of drug paraphernalia, and ownership of brass knuckles can only serve to unjustly inflame a jury's passions and prejudices against the decedent.  *See Gregory v. Oliver*, 2003 WL 1860270, at *2 (N.D. Ill. Apr. 9, 2003) (granting a motion in limine in an excessive force case to exclude drug paraphernalia the officers discovered after the alleged excessive force occurred, because it was irrelevant and unduly prejudicial under FRE Rule 403); *id.* at *1 ("In today's climate, any evidence as to a litigant's use of drugs has an obvious potential for being extraordinarily prejudicial—for creating the prospect of deflecting the fact finders' attention from the matters that are really at issue in the case to everyone's universally-shared concerns as to the problems that drug usage is creating for our society."); *Kunz v. DeFelice*, 538 F.3d 667, 676-77 (7th Cir. 2008) (affirming district court's ruling that barred "use of the word 'heroin,' because at the time of the arrest, the officers did not know the nature of the drug or Kunz's usage and because mention of heroin would be more prejudicial than helpful"); *Jackson v. City of Gahanna*, 2011 WL 587283, at *5 (S.D. Ohio Feb. 9, 2011) ("Allowing evidence of  illegal items seized from Plaintiff would undermine the protections of the Fourth Amendment by permitting the jury to

infer that the Plaintiff's culpability or status as a presumed drug dealer justify the Defendant's use of force against him."); *Wisler v. City of Fresno*, No. CVF 06-1694 LJO, 2008 WL 2954179, at *5 (E.D. Cal. July 30, 2008) (excluding evidence of marijuana use on grounds it was unduly prejudicial because not known by Defendants); *Wiersta v. Heffernan*, 789 F.2d 968, 972 (1st Cir. 1986) ("Convictions for possession of a syringe and hypodermic needle and possession of heroin . . . are unquestionably highly prejudicial.")

Inflammatory drug evidence and evidence of the brass knuckles is therefore likely to mislead or confuse the jury into reaching a verdict that reflects its consideration of this evidence as a reason justifying the use of force or limiting his damages on an improper basis. Admission of such evidence also poses a substantial risk of leading to "litigation of collateral issues, thereby creating a side issue which might distract the jury from the main issues." *Blancha v. Raymark Industries*, 972 F.2d 507, 516 (3d Cir. 1992); *Rockwell v. Yukins*, 341 F.3d 507, 513 (6th Cir. 2003) (*en banc*); *Arlio v. Lively*, 474 F.3d 46, 53 (2d Cir. 2007). The central factual dispute in this case is whether the decedent posed an imminent threat of death or serious bodily injury to Officer Linfoot or to anyone else, justifying the use of excessive force. Refuting the inferences that Defendants' may attempt to raise regarding the decedent's drug use will necessitate a mini-trial on collateral issues that have nothing to do with the central factual dispute, which will unduly consume this Courts and the jury's time, as well as the calling of several potentially unnecessary witnesses.

## V.    MOTION NO. 4 TO EXCLUDE TRAJECTORY DIAGRAMS, AUDIO/VIDEO AND PICTURES CREATED BY ALEXANDER JASON

Three of Officer Linfoot's shots struck the decedent. (Jason Depo. at 14:13-16). There is no conclusive way to determine whether the first shot that Officer Linfoot fired struck the decedent. (Jason Depo. at 20:12-21:7.) After the first shot was fired,

1  the decedent's body recoiled in toward his midsection. (Jason Depo. at 50:19-51:2;

2  Stephens Depo. at 24:10-16; Linfoot Depo. at 56:3-8.)  If someone is being shot at

3  and/or being struck by bullets, the body would naturally react by bringing the arms in

4  toward the midsection, trying to protect itself. (Jason Depo. at 51:9-12)  There is also

5  no conclusive way of determining the order of the shots that struck the decedent.

6  Accordingly, there is no direct evidence that the shot to the decedent's arm was the

7  first shot that was fired or was the first shot that struck Mr. McClain.

8      Defendants seek to admit several computer generated images by Alexander

9  Jason.  These images depict the decedent's right hand hear his waistline.  These images

10  are speculative and lacks foundation because the trajectory of the shot that entered the

11  decedent's upper right arm and then entered his chest can be reproduced without

12  placing Mr. McClain's hands at his waistband. (Jason Depo. at 26:1-27:15, 34:12-

13  36:10).  In other words, at the time the shot entered Mr. McClain's upper right arm and

14  his upper right arm was pressed against his torso, Mr. McClain's lower right arm could

15  have been in any number of positions, including down by his side or above the

16  waistline.  (Jason Depo. at 34:12-35:11, 46:6-47:9).  The only thing the trajectory of

17  that shot shows is the position of the decedent's upper right arm relative to his right

18  chest at the time one of the seven shots was sustained.  (Jason Depo. at 35:12-36:11.)

19  The trajectory of the shot to the arm is not enough on its own to show the precise

20  position of the right arm relative to the chest for any of the other shots, including the

21  shots that missed the decedent.  (Jason Depo. at 36:3-11, 45:24-46:5.)   Therefore, Mr.

22  Jason is merely speculating when creating the self-serving image of Mr. McClain's

23  hand near his waist.  Furthermore, Mr. Jason cannot lay the proper foundation to draw

24  this conclusion as he admits Mr. McClain's lower arm could have been in a different

25  position.

26      Moreover, this evidence should be excluded under FRE 403.  Any marginal

27  probative value of Mr. Jason's speculative images would be clearly outweighed by the

28  danger of unfair prejudice and be a waste of time.  Allowing the jury to see only the

self-serving image of decedent's hand near his waist may lead the jury to believe that there is no other position that his hand could have been.  Moreover, these images are cumulative as they are a poor adaptation of what the autopsy photographs already show.  Furthermore, since they are digital renderings, allowing them into evidence will waste the Court's time as Defendants would have to attempt to lay the foundation for Mr. Jason's ability and knowledge to create such an image, and then further foundation (which cannot be met) to show why the image depicts what it does.  As the images in the Mr. Jason's Initial Rule 26 Report are different than those in the autopsy photographs, it may additionally confuse the jury.  Therefore, the Court should exclude the images created by Mr. Jason as speculative, lacking foundation, cumulative, and unduly prejudicial.

Plaintiffs also object to the late-produced audio/video that has been altered by Mr. Jason.  This video is lacks foundation as Mr. Jason does not have the requisite knowledge and experience to alter video footage in this manner.  Additionally, this video was produced to Plaintiffs after the defense experts were deposed, preventing Plaintiffs from properly deposing Mr. Jason as to his qualifications to alter such video or its purpose.  Therefore, the 'slow-motion' video and any other audio/video produced by Mr. Jason should be excluded from evidence.

## VI. <u>MOTION NO. 5 TO EXCLUDE EVIDENCE OF OR REFERENCE TO THE HUMBOLDT DISTRICT ATTORNEY'S FINDINGS THAT THE SHOOTING WAS JUSTIFIED AND DECISION NOT TO PROSECUTE OFFICER LINFOOT</u>

Plaintiffs seek to exclude evidence, testimony, argument, or reference to any conclusions of the Humboldt County District Attorney's Office that Officer Linfoot's shooting of the decedent was any of the following: (1) did not warrant criminal prosecution; (2) reasonable; or (3) justified.  This includes any implicit or explicit

reference to the Humboldt County District Attorney's conclusions.  Plaintiffs contend that these conclusions are irrelevant, confusing, and should be excluded under FRE 402 and 403.  As stated above, at trial, the jury must determine whether Officer Linfoot used unreasonable or excessive force when he shot the decedent.  In addressing an excessive force case under the Fourth Amendment, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  *Graham*, 490 U.S. at 397.  Thus, only evidence of facts and circumstances known to Officer Linfoot during his encounter with Decedent is relevant and therefore admissible. *Palmquist v. Selvik*, 111 F.3d 1332, 1339 (7th Cir. 1997) ("[W]hen considering a charge of excessive force under the Fourth Amendment, evidence outside the time frame of the shooting is irrelevant and prejudicial.").

The subsequent conclusions of the District Attorney are in no way probative of the factual circumstances confronting Officer Linfoot at the time of the incident. Accordingly, this evidence is irrelevant as to questions of Defendants' liability for constitutional and state law violations.  *See Lewis v. City of Chicago Police Department*, 590 F.3d 427, 442 (7th Cir. 2009) (evidence of finding in an internal investigation "states only a conclusion and does not provide much additional probative information . . . .  It merely presents the question the jury was tasked with answering.").  Because evidence of the District Attorney's conclusions is not probative of any fact of consequence to the determination of the action, the evidence should be excluded.

Even if the evidence has some speculative probative value, it should be excluded under Federal Rule of Evidence 403 because it is highly prejudicial, poses a significant risk of confusing the jury, and would cause undue delay and waste of time. Determining the reasonableness of Officer Linfoot's actions is a task for the jury, and

there is a significant risk that the jury might give undue deference to the findings of the District Attorney.  The jury might feel bound to abide by the conclusions of the District Attorney rather than reaching its own independent conclusions based on all of the evidence.  *See Lewis*, 590 F.3d at 442 (finding that evidence of an internal investigation might cause the jury to "simply adopt the result of the internal investigation rather than come to its own conclusion after hearing all the evidence."); *Tulloss v. Near N. Montessori School, Inc*., 776 F.2d 150, 153-54 (7th Cir. 1985) (excluding evidence of findings in an internal investigation because it "was tantamount to saying this has already been decided and here is the decision.").

Moreover, the District Attorney's Office makes a finding with an eye toward criminal prosecution.  This review and determination is based on a criminal "beyond a reasonable doubt" standard, rather than the civil "preponderance of the evidence" standard that is applicable in this case.  Therefore, informing the jury that the District Attorney reviewed this shooting and opted not to criminally prosecute Officer Linfoot will likely (and improperly) persuade the jury to reach a civil finding based on a criminal standard of liability.  In fact, even informing the jury—either implicitly or explicitly—that the District Attorney reviewed the incident carries the same risk, as the jury is likely to infer that criminal charges were not brought against Officer Linfoot. When balanced against the substantial risk that the District Attorney's conclusions may influence the jury to reach a verdict based on an improper legal standard and thus invite juror error, this evidence should be excluded pursuant Rule 403.

## VII.   MOTION NO. 6 TO EXCLUDE EVIDENCE OF OR REFERENCE TO THE CITY OF EUREKA POLICE DEPARTMENT'S FINDING THAT THE SHOOTING WAS IN POLICY

Plaintiffs seek to exclude evidence, testimony, argument, or reference to the City of Eureka's findings, including the results of the Eureka Police Department Critical

Incident Response Team's investigation, that Officer Linfoot's shooting of the decedent was any of the following: (1) within policy; (2) reasonable; or (3) justified. This includes any implicit or explicit reference to the City of Eureka or its police department's findings.  Plaintiffs contend that these findings and conclusions are irrelevant, confusing, and should be excluded under FRE 402 and 403.  Plaintiffs submits that his requested exclusion of evidence should not preclude statements made by Officer Linfoot in conjunction with the City's internal investigation.

Similar to Plaintiffs' argument in their Motion in Limine No. 5 to exclude the District Attorney's findings, the findings of City's internal investigation are likewise irrelevant.  As stated above, the jury must determine whether Officer Linfoot used unreasonable or excessive force when he shot the decedent.  In addressing an excessive force case under the Fourth Amendment, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  *Graham*, 490 U.S. at 397.  Thus, only evidence of facts and circumstances known to Officer Linfoot during his encounter with the decedent is relevant and therefore admissible.  *Palmquist v. Selvik*, 111 F.3d 1332, 1339 (7th Cir. 1997) ("[W]hen considering a charge of excessive force under the Fourth Amendment, evidence outside the time frame of the shooting is irrelevant and prejudicial.").  Accordingly, the subsequent findings of the City or its police department are in no way probative of the factual circumstances confronting Officer Linfoot at the time of the incident.  As such, this evidence is irrelevant as to questions of Defendants' liability for constitutional and state law violations.  *See Lewis v. City of Chicago Police Department*, 590 F.3d 427, 442 (7th Cir. 2009) (evidence of finding in an internal investigation "states only a conclusion and does not provide much additional probative information . . . .  It merely presents the question the jury was tasked with answering.").  Because evidence of the City's findings is not probative

1  of any fact of consequence to the determination of the action, the evidence should be

2  excluded.

3  **CONCLUSION**

4       If this Court is inclined to deny Plaintiffs' Motions in Limine 1, 2, and/or 3, each

5  of which request exclusion of information unknown to Officer Linfoot at the time of

6  the incident, then Plaintiffs request bifurcation of liability from damages such that this

7  information, such as alcohol evidence, evidence of Plaintiff Lance McClain's criminal

8  history, events leading up to the shooting of which Officer Linfoot was not aware, and

9  items found on Mr. McClain's person and in his room after the shooting—all of which

10 clearly are not relevant to liability—are excluded from the "liability" phase of trial. *See*

11 *Estate of Manual Diaz v. City of Anaheim*, No. 14-55644 (9th Cir. July 7, 2016)

12 (holding that the district court erred by refusing to bifurcate the liability phase from the

13 compensatory damages phase of the trial and as a result the district court admitted

14 inflammatory evidence introduced by the defendants that had no relevance to the key

15 issue in the case, whether defendant acted within the law when he shot Mr. Diaz.)

16

17

18 DATED:  October 4, 2016              LAW OFFICES OF DALE K. GALIPO

19

20                                        /s/ Dale K. Galipo
                                         _____

21

22                                        Dale K. Galipo
                                          *Attorneys for Plaintiffs*

23

24

25

26

27

28